UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

HOLISTIC INDUSTRIES OF                                    PLAINTIFFS
ARKANSAS, LLC, and SAM
EPSTEIN ANGEL
                                    Case No. 2:20-CV-230-LTR
            vs.
                                                          DEFENDANT
FEUERSTEIN KULICK LLP


## BRIEF IN SUPPORT OF MOTION TO DISMISS, OR, ALTNERATIVELY, COMPEL ARBITRATION

Plaintiffs, Holistic Industries of Arkansas, LLC (the "Company") and Sam Epstein Angel ("Angel", who with the Company, will hereinafter be referred to as "Plaintiffs") initiated this action against Feuerstein Kulick LLP (the "Firm" or "Defendant" hereinafter) in June 2020, almost three years after Defendant's representation of the Company had terminated.  In their Complaint, which was initially filed in the Circuit Court of Chicot County, Plaintiffs allege that the Firm acted negligently in preparing a medical marijuana license application on behalf of the Company. Defendant removed the suit to federal court based on diversity jurisdiction and now files this Motion to Dismiss because (i) the Court lacks personal jurisdiction over Defendant since neither the Firm nor its members have ever stepped foot in the State of Arkansas, (ii) Plaintiffs do not have the authority or capacity to bring this lawsuit, (iii) the Complaint generally fails to state a plausible claim upon which relief can be granted, and (iv) Defendant is entitled to judgment on the pleadings because Plaintiffs cannot prove that the Firm caused them any damages or that they suffered damages as a result of the allegations in their Complaint.

In the event the Court were to deny Defendant's Motion to Dismiss, then by the terms of the engagement letter between the Company and the Firm, the matter should be referred to arbitration.  Indeed, the parties executed an engagement letter containing a valid and enforceable

1

arbitration provision, pursuant to which the parties agreed to arbitrate any dispute arising from their relationship before JAMS or NAM in New York City, New York.  Pursuant to the Federal Arbitration Act ("FAA") and the engagement letter, attached hereto as **Exhibit 1, Engagement Letter**, executed by the parties, the appropriate avenue for any dispute resolution between these parties is arbitration, not state or federal court litigation.

## BACKGROUND[1]

Feuerstein Kulick LLP is a law firm established under the laws of the State of New York and offers various legal representation to clients around the United States.  The Firm is not licensed in the State of Arkansas and neither it nor any of its attorneys has ever provided legal services in the State of Arkansas.  The Firm does not have a physical presence in Arkansas, has never visited the State of Arkansas, and does not maintain any meaningful contacts in the State of Arkansas. **Exhibit 2, Affidavit of Mitchell Kulick, Esq.**

In or around Labor Day 2017, Josh Genderson, one of the Firm's existing clients, contacted the Firm and asked the Firm to pursue a medical marijuana license in Arkansas. *Id.*  Josh Genderson asked the Firm to pursue the license on behalf of a to-be formed affiliate of Liberty Management, LLC, the entity through which Mr. Genderson held his interests in several medical marijuana licenses doing business as "Holistic". *Id.*  **See also, Exhibit 3, Affidavit of Josh Genderson.**  As the Firm understood, Josh Genderson is, and at all relevant times was, a resident of Washington, D.C. *Id.*

Because the applicant for a medical marijuana license in Arkansas had to be an Arkansas resident/entity, Northwest Registered Agent, LLC ("Northwest Registered"), a corporate services

---

[1] Unless otherwise indicated, the facts set forth herein are taken from Plaintiffs' Complaint.  For purposes of this Motion, Defendant assumes the facts to be true unless otherwise contradicted by documentary evidence that the Court may review pursuant to Fed. R. Civ. P. 12(b).

and filing firm, filed the paperwork to form the entity and, in fact, formed "Holistic Industries of Arkansas, LLC." Northwest Registered was the incorporator and registered agent of the Company but the Firm understood that Josh Genderson would be the primary client contact throughout the course of its representation. Once the application for the medical marijuana license was denied, the members agreed to dissolve the Company. **Exhibit 4, Articles of Dissolution.**

As set forth in the engagement agreement, the parties understood that the Firm's "services will be performed by us (*i.e.*, the Firm) principally in the State of New York." **Exhibit 1, Engagement Letter**. In fact, **all the Firm's work took place in New York**. And while Mitchell Kulick, Esq. did speak with Plaintiff, Sam Epstein Angel, on the telephone on two occasions, the Firm's only communication and contact with Arkansas occurred via U.S. mail and electronic correspondence. *Id.*

The parties defined their relationship, duties to one other, and the scope of the Firm's representation of the Company in an engagement letter dated as of September 1, 2017. **Exhibit 1, Engagement Letter.** Mr. Kulick executed the engagement letter on behalf of the Firm and Josh Genderson executed it on behalf of the Company. *Id.* The engagement letter unequivocally provides that the parties agree to arbitration of "any dispute arising between us relating to our work". In particular, the engagement letter states:

> In the event any dispute between us arising from or relating to our work cannot be resolved informally, we both agree to forego the right to trial by jury and to resolve any dispute between us, or any disputes the Company has with any of our lawyers or staff, including but not limited to disputes over fees and charges, exclusively through private and confidential <u>binding</u> arbitration in New York City before JAMS or NAM, established and respected mediation and arbitration services, in accordance with the rules and procedures of the selected agency. The arbitrator or arbitrators will be authorized to award any damages or relief that a court of law having jurisdiction over the dispute could award. You acknowledge by signing this letter that the Company has had the opportunity to consult with other counsel about the consequences of agreeing to the provisions of this paragraph, the Company is waiving the right it may have to request non-binding arbitration of fee disputes in

New York City under Part 137 of the Rules of the Chief Administrator of the Office of Court Administration of the New York State Unified Court System or under applicable bar association procedures.  By signing this engagement letter, the Company expressly waives that right and agrees to binding private arbitration as provided above.

. . .

By your signature below, you hereby:  (i) acknowledge the disclosures contained in this letter and otherwise made by the Firm; (ii) agree to the terms of the fee structure set forth herein for the Firm's representation of you in connection with the Company's applications for medical marijuana licenses in the State of Arkansas; (iii) acknowledge that you have had the opportunity to review the disclosures made by the Firm and the new fee structure with independent legal counsel and that the Firm has recommended that you do so; and (iv) represent and warrant that the signatories below have the authority to bind the entities below, and any affiliate created in relation to the Company's Arkansas operation, to the terms hereof.

*Id.*  While the engagement letter is technically signed by "Holistic of Arkansas, LLC," the agreement clearly governs the Firm's representation of the Company.  The engagement letter was drafted to be signed by Josh Genderson on behalf of "Holistic of Arkansas, Inc." before Northwest Registered created the entity to apply for a medical marijuana license as "Holistic Industries of Arkansas, LLC" instead of "Holistic of Arkansas, Inc."  **Exhibit 2, Affidavit of Mitchell Kulick; see also Exhibit 3, Affidavit of Josh Genderson.**  As evidenced by Plaintiffs' Complaint, the Firm represented the Company, and the engagement letter governs Defendant's representation of the Company.

As stated in Plaintiffs' Complaint, the Arkansas Medical Marijuana Commission (the "Commission") denied the Company's application for a medical marijuana license, and Plaintiffs now seek compensation from the Firm for what Plaintiffs allege was negligence in the Firm's legal representation.  In particular, Plaintiffs allege that the Firm "failed to ensure that Holistic's applications satisfied the minimum qualifications requirements."  **Compl., p. 2, ¶ 12.**  But

Plaintiffs do not specify what, in particular, the Firm did wrong.  Rather, the most specific allegation in the Complaint states that Defendant's "negligent acts and omissions include, but are not limited to, failing to ensure that Holistic's medical marijuana cultivation and dispensary application Sections A through D satisfied the minimum qualifications for merit scoring . . .." *Id.*, **p. 3, ¶ 15.**

Similarly, the Complaint does not – because it cannot – explain how the Firm's alleged inadvertence proximately caused Plaintiffs' damages.  That is, Plaintiffs do not allege any facts that explain (or even suggest) how the Company would have prevailed on its license application but for the Firm's alleged negligence.  Put differently, Plaintiffs do not explain how/why the Company would have received a medical marijuana license had it been scored on the merits.  In fact, the State of Arkansas received more than 300 applications for medical marijuana licenses and awarded only 37.  Plaintiffs' Complaint is conspicuously devoid of any factual (or conclusory) allegation that explains how/why Plaintiffs believe the Company's application was clearly one of the top 37 applications submitted.

At the time the Complaint was filed, at least two of the members of the Company were unaware that the Company considered filing a lawsuit.  **Exhibit 3, Affidavit of Josh Genderson** and **Exhibit 5, Affidavit of Richard Genderson.**  In fact, as indicated in those Affidavits, neither Josh Genderson nor Richard Genderson would have consented to the filing of a lawsuit against the Firm.  *Id.*  The absence of their consent is critical because the operating agreement of the Company requires that the Company obtain consent from a majority of the members before filing a lawsuit. **Exhibit 6, Operating Agreement, p. 3.**  In this case, there were four (4) members of the Company: Josh Genderson, Richardson Genderson, Keith Morgan, and Sam Epstein Angel.  *Id.*, **p. 2, Section 4.1.**  Thus, without Josh Genderson's and Rick Genderson's consent, the Company lacks the ability

to proceed with this suit.

After the Complaint was served, David Feuerstein, a litigation partner in the Firm,  reached out to Plaintiffs' counsel to remind counsel that any dispute must be arbitrated pursuant to the parties' engagement letter.  **Exhibit 7, Affidavit of David Feuerstein.**  But for reasons that he did not explain, Plaintiffs' counsel refused to move this case to arbitration.  *Id.*  Thus, Defendant removed the case from the Circuit Court to this Court based on diversity jurisdiction and now submits this motion to dismiss or, in the alternative, to compel arbitration.

## DISCUSSION

### I.    THE FIRM IS NOT SUBJECT TO PERSONAL JURISDICTION IN ARKANSAS

In a diversity action, a federal court may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state, and by the due process clause of the Fourteenth Amendment."  *Burlington Indus. v. Maples Indus.*, 97 F.3d 1100, 1102 (8th Cir. 1996).  Arkansas's long-arm statute allows state courts to exercise personal jurisdiction to the maximum extent allowed by the due process clause of the Fourteenth Amendment of the United States Constitution.  Ark. Code Ann. § 16-4-101(B).  The due process requirements are established over a nonresident corporate defendant when the defendant has "minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Lawson, v. Simmons Sporting Goods, Inc.*, 2019 Ark. 84, *6 (Ark. 2019)(quoting *International Shoe Co. v. Washington*, 326 U.S. 310 (1945)).  "Minimum contacts must be based on 'some act by which the defendant purposefully avails' himself of the forum state 'such that he should reasonably anticipate being haled into court there.'"  *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462,474-75 (1985).  The defendant's minimum contacts with a state "must arise out of contacts that the 'defendant *himself*' creates within the forum state."  *Walden v.*

6

*Fiore*, 571 U.S. 277, 284 (2014).  "The plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the Forum State that is the basis for its jurisdiction over him."  *Id.* at 285.  The defendant's connection with the forum state must be significant enough that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

The Supreme Court recognizes two types of personal jurisdiction: general jurisdiction and specific jurisdiction.  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017).  General jurisdiction over a corporation may be exercised where a corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  A court may exercise specific jurisdiction when the allegations of the lawsuit arise out of or relate to the defendant's contacts with the State.  *Bristol-Myers Squibb Co.*, 137 S. Ct. 1780.  To establish specific jurisdiction, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Id.*, (quoting *Goodyear*, 564 U.S. at 919).

In *Lawson*, the plaintiff sued a sporting goods store located in Louisiana where the plaintiff sustained injuries from a slip-and-fall inside the store.  *Id.*  The sporting goods store advertised in Arkansas through display ads in newspapers, television ads, and online ads with the Arkansas Democrat-Gazette, but it did not have a physical location in Arkansas.  *Id.*  The plaintiff filed the lawsuit in an Arkansas court, and the Arkansas Supreme Court affirmed a circuit court's dismissal of the case for a lack of personal jurisdiction.  *Id.*  The Arkansas Supreme Court stated that advertising and conducting promotional activities in Arkansas was not sufficient to submit the

store to personal jurisdiction in Arkansas. *Id.* at *11. Furthermore, the accident of which the plaintiff complained occurred in Louisiana, and the act giving rise to the lawsuit "did not arise out of or relate to [the sporting goods store's] contacts with Arkansas." *Id.* at *12.

A court may consider evidence not contained in the pleadings when ruling on a Rule 12(b)(2) motion. *Lawson* at *5. A motion under this rule may be supported by affidavits or other documents, and the court may hold an evidentiary hearing. *Id.* at *4-5. Additionally, no presumption arises that a plaintiff's allegations are true because the plaintiff has the burden to prove personal jurisdiction exists. *Id.* (citing *Hawes Firearm Co. v. Roberts*, 263 Ark. 510, 512, 565 S.W.2d 620, 621 (Ark. 1978).

The facts in the record show that the Firm never established or maintained any meaningful contacts within the State of Arkansas such that personal jurisdiction may be exercised over them. Indeed, the Firm does not have any continuous or systematic contacts in Arkansas. Nor do Plaintiffs even suggest as much. Rather, the Complaint explicitly acknowledges that Feuerstein Kulick "is a New York limited liability partnership with its principal place of business located in New York, New York." **Compl., p. 1, ¶ 3.**

Furthermore, the Firm cannot be subject to specific jurisdiction in Arkansas because the allegations of the Complaint arose elsewhere. All work and representation in this matter occurred in New York, New York (just as the engagement letter said would be the case). The Firm never entered Arkansas and never directed any solicitation to Arkansas. In fact, Plaintiffs actually initiated contact with the Firm when Josh Genderson (who was in Washington D.C.) contacted the Firm and asked it to draft an application. The Complaint is simply devoid of any allegation connecting the Firm to Arkansas beyond Plaintiffs' allegation that Sam Epstein Angel lives in Arkansas and the Company (which was dissolved before the initiation of this lawsuit) was an

Arkansas limited liability company.

Moreover, aside from two remote communications, none of the Firm's actions were directed at—or occurred in—Arkansas.  Just as the plaintiff's injury in *Lawson* occurred in Louisiana, the actions alleged in Plaintiffs' Complaint (if true) occurred outside of Arkansas.  In fact, the Firm has fewer contacts with the state of Arkansas than the defendant in *Lawson* because the Firm did not advertise in newspapers in Arkansas, host events in Arkansas, or advertise on Arkansas company's or newspaper's websites.  Thus, under the rationale set forth in *Lawson*, the Firm cannot be subject to personal jurisdiction in Arkansas.

Finally, and practically speaking, naming the Firm in a lawsuit in an Arkansas court offends the traditional notions of fair play and justice.  The Firm maintains no physical presence in Arkansas and conducts no regular business in Arkansas.  The Firm does not direct any advertisements to Arkansas through publications circulated in Arkansas.  The Firm's only presence and activity remain in New York.  And the parties' engagement letter makes clear that any dispute arising out of the engagement should be litigated before an arbitration panel in New York, New York.  Most importantly, the Company initiated the relationship with the Firm fully aware of the Firm's location and the forum selection clause in the engagement letter.  To subject the Firm to personal jurisdiction in Arkansas would be unjust and contrary to the relationship, understanding, written agreement, and contact between the parties.  Plaintiffs' Complaint, therefore, should be dismissed for a lack of personal jurisdiction.

## II.     PLAINTIFFS FAIL TO ALLEGE FACTS UPON WHICH RELIEF MAY BE GRANTED

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  This rule requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007).  To survive a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff's complaint must demonstrate a plausible claim for relief, which pleads factual content sufficient to allow the court to reasonably infer a defendant is liable for the facts in the plaintiff's complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).

In evaluating a motion to dismiss under Rule 12(b)(6), the facts alleged in the complaint are accepted as true, but the complaint must allege "facts to state a claim to relief that is plausible on its face." *Sorace v. United States*, 788 F.3d 758, 762 (8th Cir. 2015), quoting *Bell Atlantic Corp.*, 550 U.S. 570.  In *Sorace*, the Eighth Circuit upheld a district court's dismissal of a complaint alleging negligence under South Dakota law because the complaint simply alleged that the defendant was negligent in failing to stop a vehicle.  *Id.* at 764.  As the Court there reasoned, this conclusory statement does not state a claim because it does not allege an appropriate claim for negligence—a proper claim required the plaintiff to allege the elements of negligence required in that scenario of a special relationship.  *Id.*  Because the Plaintiff failed to allege the appropriate elements of negligence, dismissal of the complaint was proper.  *Id.*  "To establish a prima facie case of negligence, a plaintiff must show that damages were sustained, that the defendant breached the standard of care, and that the defendant's actions were the proximate cause of the damages." *Union Pac. R.R. v. Sharp*, 330 Ark. 174, 180 (Ark. 1997).

Plaintiffs' Complaint merely states a label and conclusion that the Firm is liable to Plaintiffs by failing to ensure an application met minimum requirements.  Such a statement is vague and does not satisfy the standard requiring Plaintiffs to state a plausible claim upon which relief may be granted.  Here, Plaintiffs have failed to state a plausible claim for relief based on negligence because the Complaint fails to state any fact that satisfies the required elements to prove

negligence.  Plaintiffs are required to state in their Complaint the facts that plausibly state a claim for relief.  By not specifying any act it committed or any act it should have done but did not, Plaintiffs failed to put the Firm on notice of their claim.

Plaintiffs have also failed to state how the Firm's alleged inadvertence proximately caused them harm.  As Plaintiffs allege in their Complaint, the Firm somehow "fail[ed] to ensure that [the Company's] medical marijuana cultivation and dispensary application Sections A through D satisfied the minimum qualifications for merit scoring in the Rules and Regulations promulgated by the Commission."  **Compl., p. 3, ¶ 15.**  Plaintiffs then allege "[b]ut for the Firm and its attorneys' negligence, [the Company] would have been awarded a medical marijuana dispensary license."  *Id.*, ¶ 16.  But Plaintiffs do not allege any facts to support such a leap logically.  That is, Plaintiffs do not – because they cannot – explain how it was all but certain that the Company would have received a medical marijuana license had it been scored on the merits.  In fact, the State of Arkansas received more than 300 applications for medical marijuana licenses and awarded only 37.  Thus, it will be virtually impossible for Plaintiffs to establish "but for causation" unless and until they can (i) compel the Arkansas Department of Health to re-score all 300 applications with the Company's application included, and (ii) establish that the Company's application would have been scored in the top 37.  In short, Plaintiffs' Complaint lacks sufficient facts to state a plausible claim upon which relief may be granted and thus fails to satisfy the pleading requirements.

In fact, this case is analogous *Sorace*, where the Eighth Circuit affirmed the dismissal of the Complaint on similar grounds.  There, the Eighth Circuit determined that the complaint failed to meet the requirements of pleading a claim because the plaintiff did not allege an element of the claim of negligence.  Similarly, here, Plaintiffs have not identified a single act or omission that satisfies any element of negligence.  A blanket statement and conclusion that the Firm failed to

11

satisfy requirements is insufficient to state a claim upon which relief may be granted.  Plaintiffs'
Complaint is a vague legal assertion with labels and conclusions that states no facts that would
state a plausible claim upon which relief may be granted.  As a result, Plaintiffs' Complaint should
be dismissed pursuant to Rule 12(b)(6).

### III.   PLAINTIFFS LACK CAPACITY TO BRING THIS LAWSUIT

Arkansas statutory law provides that an attorney may not be sued by "persons not in privity
of contract with the person, partnership, or corporation for civil damages resulting from acts,
omissions, decisions, or other conduct in connection with professional services performed by the
person, partnership, or corporation," except for conduct amounting to fraud or intentional
misrepresentation or unless the attorney or firm "was aware the primary intent of the client" was
for the attorney's or firm's legal services to "benefit or influence the particular person bringing the
action," provided that such intent is in writing identifying the individual to receive said benefit.
Ark. Code Ann. § 16-22-310.  This statute clearly indicates that a plaintiff must have "direct privity
with the attorney or entity to be held liable for legal malpractice.  *McDonald v. Pettus*, 337 Ark.
265, 271 (Ark. 1999).  "[T]he public policy of Arkansas is to shield attorneys from malpractice
suits brought by parties lacking privity with them."  *Great Am. Ins. Co. v. Dover*, 456 F.3d 909,
912 (8th Cir. 2006).  Furthermore, "[a] member of a limited liability company is not a proper party
to a proceeding by or against a limited liability company, by reason of being a member of the
limited liability company, except where the object of the proceeding is to enforce a member's right
against or liability to the limited liability company or as otherwise provided in an operating
agreement."  Ark. Code Ann. § 4-32-305.

Sam Epstein Angel does not have standing to bring this lawsuit and is improperly named
as a Plaintiff.  In simply reviewing the Complaint, Sam Epstein Angel does not allege any special

relationship with the Firm and does not allege that he was at any time represented by, or in privity with, the Firm.  The Firm represented only the Company, and the Complaint does not make any allegation to the contrary.  Sam Epstein Angel did not sign the engagement letter and was never a client of the Firm.  Accepting all facts alleged in the Complaint as true, Sam Epstein Angel has no standing and cannot state any claim that he personally could maintain against the Firm.

Nor can Sam Epstein Angel cure this flaw by claiming that he is a member of the Company. Indeed, Arkansas law explicitly prohibits the type of action that Sam Epstein Angel is alleging in his Complaint against the Firm.  He is not a proper plaintiff and any and all claims he asserts against the Firm should be dismissed because he is not a proper party to this lawsuit as provided by Arkansas statute.  He does not assert a claim personal to him, and he does not assert a claim for enforcing his rights against the Company.

Similarly, the Company lacks authority to bring this lawsuit and its claims against the Firm should also be dismissed.  Pursuant to the terms the operating agreement, the Company requires that three (3) of the (4) members must have agreed to the filing of the lawsuit on behalf of the Company.  Here, two of the members, Josh Genderson and Richard Genderson, were unaware of the lawsuit and would have opposed the filing of a lawsuit against the Firm, had they been aware. Thus, three (3) members could not have approved the action to sue as required by the operating agreement.  Accordingly, the lawsuit was filed in violation of the operating agreement.

The Court should dismiss any and all claims for a lack of standing and for a failure to state a plausible claim upon which relief may be granted.  The Complaint fails to allege how the Company – which, in any event, was dissolved before this action was initiated – is able to bring this lawsuit without the consent of three of its four members.

IV.   **DEFENDANT IS ENTITLED TO JUDGMENT ON THE PLEADINGS**

Defendant is also entitled to judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure because Plaintiff cannot prove causation or damages.  When evaluating a motion on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil procedure, a court accepts "as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002), citing *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." *Id.*

"To show damages and proximate cause in a legal malpractice action, the plaintiff must show that but for the alleged negligence, the result would have been different in the underlying action." *Callahan v. Clark*, 321 Ark. 376, 386, (Ark. 1995).  "To prevail on a claim for legal malpractice, 'a plaintiff must prove that the attorney's conduct fell below the generally accepted standard of practice and that this conduct proximately caused the plaintiff damages.'" *Hunter v. Keck*, 2020 Ark. App. 233, *2 (Ark. App. 2020); *quoting S. Farm Bureau Cas. Ins. Co. v. Daggett*, 354 Ark. 112, 122 (Ark. 2003); *see also Barnett v. Schwartz*, 47 A.D.3d 197, 203 (N.Y. App. 2nd Div. 2007) (a plaintiff must prove that the defendant "failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by members of the legal community"). Furthermore, a plaintiff alleging legal malpractice must show that, but for the alleged negligence of the attorney, the "result in the underlying action would have been different."  *Dagget*, 354 Ark. 122.  When evaluating damages in a legal malpractice action, "[t]he general rule is that an attorney is not liable for any damages which are remote or speculative. The test of whether damages are

14

remote or speculative has nothing to do with the difficulty in calculating the amount, but rather the more basic question of whether there are identifiable damages." *Callahan,* 321 Ark. 387, quoting Ronald E. Mallen & Jeffrey M. Smith, ***Legal Malpractice***, § 16.3 at 894-895 (1989); *see also Riviera Prop. Holdings, LLC v Ferber Chan Essner & Coller, LLP,* 58 Misc. 3d 708, 715.  While the substantive law of New York is to be applied pursuant to the Engagement Letter signed by the parties, the elements of legal malpractice are substantially similar enough in New York and Arkansas that the same result should be reached in either jurisdiction:  Defendant is entitled to judgment on the pleadings.

Accepting all factual allegations in the Complaint as true and accepting all reasonable inferences in favor of the Company, the Firm is entitled to judgment as a matter of law because Plaintiffs cannot prove that the Firm's conduct resulted in damage to the Company.  Indeed, the Company must prove that some action of the Firm fell below the standard of care of reasonable skill and diligence.  Plaintiffs' only allegation supporting causation is that the Commission denied the Company's application for a medical marijuana license.  Plaintiffs make no allegation identifying what the Firm actually did that falls below the standard of care.  In fact, the Commission evaluated more than 300 applications and granted only thirty-seven (37) licenses therefrom.  The mere fact that the Company's application was rejected by the Commission is not evidence that the Firm failed to meet the standard of care.  The Complaint, however, lacks such an allegation.  If the Firm had failed to file the application timely or failed to follow some unambiguous instructions, Plaintiffs would have presumably alleged as much.  The absence of such allegations speaks volumes.  Put simply, Plaintiffs' bare allegations of negligence fail to identify any action of the Firm that fell below the standard of care or that caused any perceived damages of Plaintiffs.

In addition, Plaintiffs cannot prove that they sustained any damages as a result of the Firm's representation of the Company in any event.  In the Complaint, Plaintiffs allege that the Firm prevented Plaintiffs from obtaining a medical marijuana license worth millions of dollars.  In order to prove such a claim, Plaintiffs must establish that, but for the Firm's failure to meet the standard of care, Plaintiffs would have been awarded a medical marijuana license by the Commission.  Such a contention is pure speculation.  If thirty-seven (37) of 300 applicants were awarded licenses, then the Company had, at best, a 12.33% chance of success.  Moreover, and perhaps more importantly, Plaintiffs have no way to prove that they would have been awarded a license.  No one can say what the five (5) members of the Commission may have done if they had evaluated the Company's application against the other 300 applications.  Furthermore, a jury is not in a position to make that determination either.  Thus, the Company will not be able to prove that it would have obtained a medical marijuana license but for the Firm's conduct.  As such, Plaintiff's Complaint should be dismissed.

## V.   IN THE ALTERNATIVE, THE COURT SHOULD COMPEL ARBITRATION

**1.    The Federal Arbitration Act**

In the event the Court denies the Firm's Motion to Dismiss, the Court should refer this case to arbitration pursuant to the agreement of the parties.  The Federal Arbitration Act ("FAA") provides the matter currently pending before the Court should proceed in arbitration pursuant to the written agreement between the parties.  "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  This provision reflects a liberal federal policy favoring arbitration and a fundamental principle that arbitration is a matter of contract. *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011).  Therefore, courts must place

arbitration agreements on equal footing with other contracts and enforce them according to their terms. *Id.* There is a strong federal policy in favor of arbitration; therefore, any doubts concerning the waiver of arbitration should be resolved in favor of arbitrating. *LeWallen v. Green Tree Servicing, LLC,* 487 F.3d 1085, 1090 (8th Cir. 2007).

**2.      Application Standards of the FAA**

State-law principles governing contract formation apply in determining whether parties agreed to arbitrate certain matters. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration." *Torres v. Simpatico Inc.*, 781 F.3d 963, 968 (8th Cir. 2015). Disputes arising from legal representation where arbitration is agreed to by both parties in an engagement letter are subject to arbitration. *See CRT Capital Group v. SLS Capital, S.A.*, 63 F. Supp. 3d 367, 378 (S.D.N.Y. 2014). Federal law governs the question of arbitrability—whether the dispute falls within the scope of the arbitration agreement. *Shaw Group Inc. v. Triplefine International Corp.*, 322 F.3d 115, 120 (2d Cir. 2003); *Donaldson v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). A broad arbitration clause indicates that the parties intended to arbitrate even questions of arbitrability. *Shaw; see also Fleet Tire Serv. v. Oliver Rubber Co.*, 118 F.3d 619 (8th Cir. 1997); *see also Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 63 (2d Cir. 1983). Phrases contained in the arbitration clauses such as "all disputes," "any and all disputes," and "arising out of or relating to" are such broad wording that supports parties' intention to arbitrate questions of arbitrability. *See id.*

**3.      The Parties Executed a Valid and Enforceable Arbitration Agreement**

The engagement letter provides that New York law shall apply to dealings of the parties. Whether this Court applies Arkansas or New York state law regarding contract formation, the

engagement letter represents a valid and binding contract under Arkansas and New York law.  "In Arkansas, the essential elements of a contract are:  (1) competent parties; (2) subject matter; (3) consideration; (4) mutual agreement; and (5) mutual obligations."  *Jorja Trading, Inc. v. Willis*, 2020 Ark. 133, *4 (Ark. 2020); citing *City of Dardennelle v. City of Russellville*, 372 Ark. 486, 491 (Ark. 2008).  In New York, a contract is formed when the parties intend to be bound and satisfy a "meeting of the minds" regarding the material terms of the transaction.  *Central Federal Sav., F.S.B. v. National Westminster Bank*, 176 A.D.2d 131, 132 (1st Dep't 1991).

Here, the basic elements of contract formation are met.  The Company and the Firm are both competent parties formed as legal entities in Arkansas and New York respectively.  The parties that executed the engagement letter are likewise competent.  Josh Genderson was a member of the Company with the authority to bind the Company to contractual matters.  Likewise, Mitchell Kulick, Esq. is a competent person with appropriate authority to bind the Firm to the contract.

The engagement letter clearly describes the subject matter of the contract to govern the relationship of the parties.  The Firm agreed to work with the Company to assist in the preparation of materials for the application for a medical marijuana license in the State of Arkansas.  The Company agreed to compensate the Firm for its services in assisting with the preparation of the application.  Thus, the subject matter was a medical marijuana license application to be filed in Arkansas, and the engagement letter clearly described the legal consideration for both parties.

The mutual agreement and obligations, which also constitute the "meeting of the minds," is clearly defined in the engagement letter.   The engagement letter clearly describes the terms and conditions of the representation and payment.  Both parties signed the engagement letter, evidencing their intent to be bound and perform under the contract.  Notably, Plaintiffs have not claimed that the engagement letter is ineffective or not binding, and their Complaint alleging only

negligence contemplates that the legal relationship and services provided fit squarely within the contractual agreement of the parties as defined by the engagement letter. The engagement letter encouraged the Company to seek independent legal counsel in the execution of the engagement letter. The terms explicitly state that all parties have read and understood all terms of the agreement. The Company's signature clearly indicates its intent to be bound by the agreement. Thus, the parties had a clear "meeting of the minds" on all material terms and conditions of the contract. There can be no question that a valid, binding, and effective contract existed and governed the relationship of the parties.

**4.      The Parties' Dispute is Governed by Arbitration**

The engagement letter is a written contract signed by both parties clearly indicating their intent to arbitrate any disputes arising among the parties. By filing a Complaint, Plaintiffs have indicated there is a dispute arising from or related to the work performed by the Firm. The Company indicated its consent and agreement to these terms when it signed the engagement letter. Furthermore, the engagement letter explicitly informs the Company that it is specifically approving and consenting to the terms and conditions contained in the engagement letter. Thus, by signing, the Company acknowledged and agreed to arbitrate any and all disputes arising from the Firm's representation of the Company.

Even the question of the scope of arbitration is subject to arbitration because the parties executed a broad arbitration clause. Indeed, the arbitration clause which refers to "any dispute arising from or related to our work," indicates the parties' intent to arbitrate *all* disputes arising from the Firm's representation of the Company. The broad wording will also result in any dispute related to the question of arbitrability being resolved in arbitration. The engagement letter is clear that the parties intended to settle all disputes in arbitration. The Company's Complaint addresses

a dispute arising from legal representation described in the engagement letter and accurately represents a matter the parties agreed to arbitrate in the engagement letter.  Therefore, this matter should be resolved through arbitration.

In fact, pursuant to the terms of the agreement, the Complaint should never have been filed in a state or federal court, and, pursuant to the FAA, this matter, if not dismissed for the reasons set forth above and herein, should be referred to arbitration before JAMS or NAM in New York City, New York.  The policy of enforcing arbitration agreements dictates that this matter must be resolved through arbitration rather than through a federal or state court.  Such relief is appropriately provided for under the FAA and is consistent with the terms of the contract executed by the parties.

## CONCLUSION

For the reasons described herein, the Complaint should be dismissed in its entirety with prejudice.  In the alternative, the Court should compel the parties to arbitrate the instant dispute before JAMS or NAM in New York City, New York.  Any other action would be inconsistent with the Federal Arbitration Act and the express written agreement between the parties.  Therefore, in the event the Court does not dismiss the Complaint in its entirety, the Court should issue an order requiring the parties to arbitrate before JAMS or NAM in New York City, New York.

Respectfully submitted,

BARBER LAW FIRM PLLC
425 W. Capitol Avenue, Suite 3400
Little Rock, AR  72201
501-372-6175
501-375-2802 = fax

By:    R. Kenny McCulloch #88044
       D. Reece Owens #2017183
       ATTORNEYS FOR DEFENDANT
       rkmcculloch@barberlawfirm.com
       rowens@barberlawfirm.com