**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION**

**HOLISTIC INDUSTRIES
of ARKANSAS, LLC**                                                                        **PLAINTIFF**

**v.**                                    **Case No.: 2:20-cv-230-LPR**

**FEUERSTEIN KULICK LLP**                                                      **DEFENDANT**

**<u>ORDER</u>**

Plaintiff Holistic Industries of Arkansas, LLC sued Defendant Feuerstein Kulick LLP for legal malpractice.  The claim centers on Defendant's work on medical marijuana license applications.[1]  Pending before the Court is a Motion to Dismiss.[2]  Defendant raises standing, personal jurisdiction, and failure to state a claim upon which relief may be granted.[3]  In the alternative, Defendant argues that the dispute between the parties is subject to binding arbitration.[4]

For the reasons discussed below, the Court GRANTS in part and DENIES in part the Motion to Dismiss.  Defendant's positions on standing and personal jurisdiction are wrong. However, Defendant is correct that the parties must resolve this dispute in binding arbitration. Accordingly, this case is STAYED pending the resolution of arbitration.  The other requests in the Motion to Dismiss are denied as moot.

---

[1]   Compl. (Doc. 2) ¶¶ 6, 12–13.  In the original Complaint, Sam Epstein Angel was also a named Plaintiff, but the Amended Complaint, which is the operative complaint, names only Holistic Industries of Arkansas, LLC as Plaintiff.  *See* Am. Compl. (Doc. 29).  The Court will disregard Defendant's arguments as they relate only to Mr. Epstein as they are now moot.

[2]   Def.'s Mot. to Dismiss (Doc. 13).

[3]   *Id.* ¶ 5.  Defendant also seeks judgment on the pleadings, although it is not entirely clear how its arguments in this section of its Brief are different from its failure-to-state-a-claim arguments.  In any event, as the Court explains below, all merits-related arguments are moot.

[4]   *Id.*

*Standing*[5]

"Standing is a threshold inquiry and jurisdictional prerequisite that must be resolved before reaching the merits of a suit."[6]  Defendant argues that the Complaint fails to allege how Holistic Industries of Arkansas, LLC can properly bring this action.  Defendant's argument is two-fold: (1) the Operating Agreement prohibits Holistic Industries of Arkansas, LLC from bringing this suit;[7] and (2) Holistic Industries of Arkansas, LLC "was dissolved before this action was initiated."[8]

On the first point, Defendant asserts that the Operating Agreement requires three of the four members to agree to "the filing of [a] lawsuit . . . ."[9]  Defendant submitted affidavits from two members of Holistic Industries of Arkansas, LLC who state that "had [they] been advised by any member of the Company [that] it was considering a lawsuit against the firm, [they] would have objected" and, if necessary, invoked a provision of the Operating Agreement to call a vote.[10]  In response, Holistic Industries of Arkansas, LLC says that "there is no provision in the Operating Agreement requiring 3 of 4 Founding Members to authorize suit."[11]  Holistic Industries of

---

[5]   Both sides fail to make clear why they consider the corporate authority issue to be one of "standing." Neither party references Article III of the Constitution, nor do they cite Rule 12(b)(1) of the Federal Rules of Civil Procedure. In any event, the Court will analyze the "standing" challenge under Rule 12(b)(1).  The Eighth Circuit explains that "[a] court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack . . . .'" *Carlsen v. Gamestop, Inc.*, 833 F.3d 903, 908 (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). For a facial attack on jurisdiction, a court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending a motion brought under Rule 12(b)(6)." *Id.* (quoting *Osborn*, 918 F.2d at 729 n.6).  "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (quoting *Osborn*, 918 F.2d at 729 n.6). Here, Defendant presented evidence beyond the scope of the pleadings.  Accordingly, the Court treats Defendant's standing challenge as a factual attack.

[6]   *Curtis Lumber Co., Inc. v. Louisiana Pac. Corp.*, 618 F.3d 762, 770 (8th Cir. 2010) (quoting *Medalie v. Bayer Corp.*, 510 F.3d 828, 829 (8th Cir.2007)).

[7]   Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14) at 13.

[8]   Supplemental Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 30) at 8.

[9]   Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14) at 13.

[10]   Ex. 3 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-3) ¶ 13; Ex. 5 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-5) ¶ 10.

[11]   Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15) at 17.

Arkansas, LLC also says that 3 of the 4 members "have authorized suit."[12]  To support this latter proposition, Holistic Industries of Arkansas, LLC provides an Assignment dated August 15, 2018, which shows that Josh Genderson and Richard Genderson (two of the original four Holistic Industries of Arkansas, LLC members) assigned their interests in Holistic Industries of Arkansas, LLC to David Engel.[13]

There is no explicit language in the Operating Agreement supporting Defendant's position that a lawsuit requires approval of three members. Defendant's argument might be referring to a provision in the Operating Agreement that requires legally binding agreements to be signed by at least three of the four Founding Members.[14]  But filing a lawsuit is not the same thing as entering a legally binding agreement.  Moreover, even if the Operating Agreement required three-member approval (it did not), Holistic Industries of Arkansas, LLC has presented evidence that Josh Genderson and Richard Genderson assigned their interests in Holistic Industries of Arkansas, LLC to David Engel in August 2018.[15]  Defendant does not deny the validity of this assignment.[16]  So, this means that Mr. Engel has two member votes and the original named Plaintiff, Mr. Epstein, a third.[17]  Three of the four members authorized the suit.[18]

Defendant's second argument is that Holistic Industries of Arkansas, LLC, was "a dissolved entity" at the time it filed the lawsuit and thus "lack[ed] authority to sue under Arkansas law."[19]  Defendant cited an Eighth Circuit case for this proposition, which in turn cited an Arkansas

---

[12]  *Id.*

[13]  Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15-2) at 6.

[14]  *See* Ex. 6 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-6) Article 5.2.

[15]  Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15-2) at 3, 7.

[16]  Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 19) at 8.

[17]  Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15-2) ¶¶ 14–15.

[18]  *Id.* ¶ 16.

[19]  Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 19) at 8.  In support of this argument, Defendant

Supreme Court decision.[20]  Both cases dealt with corporations whose corporate charters had been involuntarily revoked by the Arkansas Secretary of State.[21]  If not completely inapposite, they are certainly not controlling.  Under Arkansas law, a dissolved LLC can prosecute civil lawsuits as part of winding up the LLC.[22]

In short, neither of Defendant's standing arguments carries the day.[23]

### Personal Jurisdiction

Defendant says the Court lacks personal jurisdiction over it.  To survive a motion to dismiss for lack of personal jurisdiction, the nonmoving party must make a *prima facie* showing that personal jurisdiction exists, "which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'"[24]

When, like here, a defendant raises a 12(b)(2) motion, the path for resolution of that motion depends in part on whether the Court chooses to hold a hearing or "instead relies on pleadings and

---

submitted Holistic Industries of Arkansas, LLC's Articles of Dissolution dated March 16, 2018, and a copy of the Operating Agreement. Ex. 4 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-4); Ex. 6 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-6).

[20]  Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 19) at 8.

[21]  *See Charles Brooks Co. v. Georgia-Pacific, LLC*, 552 F.3d 718, 722 (8th Cir. 2009).  In *Brooks*, the Eighth Circuit stated that, "[u]nder Arkansas law, when the Secretary of State revokes a corporation's corporate charter for failure to pay franchise taxes, the corporation ceases to exist legally." *Id.* (citing *HRR Arkansas, Inc. v. River City Contractors, Inc.*, 350 Ark. 420, 428, 87 S.W.3d 232, 237 (Ark. 2002)).  The court went on to say that "'[a] corporation cannot file a complaint in court after it ceases to exist legally' because it lacks 'the capacity to sue.'" *Id.* (quoting *River City*, 350 Ark. at 428, 87 S.W.3d at 237).

[22]  *See* Ark. Code Ann. § 4-32-903(2)(A) (allowing persons winding up an LLC to "[p]rosecute and defend suits") (repealed July 28, 2021); Ark. Code Ann. § 4-38-702(b)(1)–(2)(C) ("In winding up its activities and affairs, a limited liability company . . . may prosecute and defend actions and proceedings, whether civil, criminal, or administrative . . . .") (effective July 28, 2021).

[23]  Holistic Industries of Arkansas, LLC meets the traditional constitutional standing requirements as well.  *See Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S. Ct. 1540, 1547 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–560 (1992)).  Holistic Industries of Arkansas, LLC alleges that Defendant's negligent completion of Holistic Industries of Arkansas, LLC's license application resulted in it losing valuable licenses.  That meets the injury-in-fact and causation elements.  And a favorable judicial ruling in this case can redress Holistic Industries of Arkansas, LLC's injuries.  Any way you slice it, Holistic Industries of Arkansas, LLC has standing.

[24]  *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (internal quotations omitted).

affidavits."[25]  If the Court chooses the latter approach, it "'must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.'"[26] Because the Court has not held a hearing on this matter, the following factual findings are based on the record evidence, with all factual disputes and all reasonable inferences resolved in favor of Holistic Industries of Arkansas, LLC.

Defendant is a law firm that operates as a limited liability partnership and has its principal place of business in New York, New York.[27]  Defendant holds itself out as "one of the preeminent and [sic] go-to law firms for individuals and companies operating in the legal cannabis space, representing clients across the US in virtually every facet of the industry."[28]  Defendant does not advertise in Arkansas, nor has it "actively sought or established any business relationships in the State of Arkansas."[29]  No one in the firm has traveled to Arkansas.[30]

Around September 2017, Josh Genderson (a resident of Washington, D.C) contacted Mitchell Kulick, a member of the law firm, "to engage the Firm's assistance in submitting an application on behalf of the [Holistic Industries of Arkansas, LLC] in the State of Arkansas."[31]

---

[25]  *Johnson v. Arden*, 614 F.3d 785, 793 (8th Cir. 2010) (quoting *Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 646–47 (8th Cir. 2003)); *see also K-V Pharm. Co.*, 648 F.3d at 592.

[26]  *Johnson*, 614 F.3d at 793–94 (quoting *Epps*, 327 F.3d at 646–47).  Of course, even in this scenario, a plaintiff seeking to establish that the Court has personal jurisdiction over a specific defendant still "carries the burden of proof and that burden does not shift to the party challenging jurisdiction."  *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).  And to resolve the dispute, the Court will consider the pleadings as well as the affidavits and exhibits submitted to support or oppose the Motion.  *See K-V Pharm. Co.*, 648 F.3d at 591–92. However, it bears emphasizing that "jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing."  *Epps*, 327 F.3d at 647.  At this stage, a plaintiff "'need only make a prima facie showing of jurisdiction.'"  *Pangea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011).

[27]  Am. Compl. (Doc. 29) ¶ 2.

[28]  Ex. C to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15-3).

[29]  Ex. 7 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-7) ¶ 4.  Defendant did engage companies in Arkansas during the course of its work for Holistic Industries of Arkansas, LLC.  *See infra* notes 47, 54 and accompanying text.

[30]  *Id.*

[31]  Ex. 3 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-3) ¶¶ 4–5.

Specifically, Mr. Genderson, engaged the law firm "to assist in the preparation of [Holistic Industries of Arkansas, LLC's] application for a medical marijuana license in Arkansas."[32]  There is one quirk that will become important later:  Holistic Industries of Arkansas, LLC was not yet in existence at this time.[33]

Defendant sent an engagement letter to Mr. Genderson via email.[34]  The engagement letter "outline[d] the scope of [the law firm's] services" and explained the fee structure.[35]  The engagement letter was addressed to Holistic of Arkansas, LLC (not to be confused with Holistic Industries of Arkansas, LLC, the plaintiff in the case at bar).[36]  The engagement letter defined Holistic of Arkansas, LLC as the "'Company.'"[37]

The engagement letter stated that "[t]he Company has engaged the Firm to represent it in connection with its applications for [] medical marijuana cultivation and dispensary licenses in the State of Arkansas."[38]  The engagement letter stated that the law firm's services "will be performed by [the law firm] principally in the State of New York and that the substantive law of New York will govern any issues that may arise concerning this representation and any of the provisions of this agreement[,] including its enforcement."[39]  The engagement letter stated that any dispute the parties could not resolve informally would be resolved "exclusively through private and confidential binding arbitration in New York City before JAMS or NAM . . . ."[40]

---

[32]  *Id.* ¶ 3.

[33]  Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15) at 2.

[34]  *See* Ex. 1 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-1) at 1–4.

[35]  *Id.* at 1–2.

[36]  *Id.* at 1.

[37]  *Id.*

[38]  *Id.*

[39]  *Id.* at 2.

[40]  *Id.* at 4.

Part of the fee structure set out in the engagement letter included the potential for the law firm to acquire an equity interest in the Company.[41]  Specifically, in the event that the Company received a medical marijuana license, the Company was to issue to the law firm "[u]nits and interests . . . equal to two percent (2%) in and to the Company and any affiliate owned and/or controlled by Josh Genderson and/or David Engel as far as such entity relates to the Arkansas operation(s)."[42]

Josh Genderson signed the letter on behalf of "Holistic of Arkansas, Inc."[43]  The careful reader will note that we now have three purported companies to keep straight: (1) Holistic Industries of Arkansas, LLC (the plaintiff here); (2) Holistic of Arkansas, LLC (the company to whom the engagement letter was directed); and (3) Holistic of Arkansas, Inc. (the company on whose behalf Mr. Genderson purported to sign the engagement letter).  None of these entities existed at the time the engagement letter was drafted, sent, or signed.[44]

At various times during its legal representation, Defendant communicated by phone with Sam Epstein Angel, an Arkansas resident.[45]  Defendant also contacted Arkansas through "U.S. mail and electronic correspondence."[46]  On September 11, 2017, Defendant "contacted Northwest Registered Agent, LLC, a corporate services firm, to form an Arkansas Limited Liability company called 'Holistic Industries of Arkansas, LLC' as that formation was contemplated by the

---

[41]  *Id.*  Defendant also received $50,000.00 at the time the engagement letter was signed.  Ex. 2 to Def.'s Br. in Supp. of Def.'s Motion to Dismiss (Doc. 14-2).

[42]  Ex. 1 to Def.'s Answer (Doc. 3) at 7.

[43]  *Id.* at 1, 4. Mr. Genderson also signed the letter on behalf of Liberty Management and Full Moon, LLC.  *Id.* at 4. These two companies do not appear to be relevant to the legal analysis.

[44]  Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15) at 2; Ex. 2 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-2) at 2.

[45]  Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14) at 3; Compl. (Doc. 2) ¶ 2.

[46]  Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14) at 3.

engagement."[47]   The Articles of Organization for Holistic Industries of Arkansas, LLC indicate that Northwest Registered Agent, LLC has an office located in Mountain Home, Arkansas.[48]   That Mountain Home address is listed as the "Registered Agent" address for Holistic Industries of Arkansas, LLC.[49]

The deadline for the marijuana license applications was September 18, 2017.[50]   On that day, Defendant emailed the "the applications and supporting materials to a FedEx location in Little Rock, Arkansas, where a representative of Holistic Industries [of Arkansas, LLC] picked up the print job and rushed it to the [Marijuana] Commission's office minutes before the deadline."[51]   At the beginning of October 2017, Holistic Industries of Arkansas, LLC learned that its license application "failed to provide adequate information for the staff to verify that [its] application [met] the minimum criteria required for submission for merit review by the Commission."[52]   Because the license-application deadline was September 18, 2017, Holistic Industries of Arkansas, LLC was unable to cure this issue.[53]

At some point after learning that the application was deficient, Defendant engaged an Arkansas lobbyist to assist in dealing with the Arkansas Medical Marijuana Commission and to "push" Holistic Industries of Arkansas, LLC's "agenda."[54]   Defendant also told Holistic Industries

---

[47]   Ex. 2 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-2) at 2.

[48]   Ex. 4 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-4) at 2.

[49]   *Id.*

[50]   Am. Compl. (Doc. 29) ¶ 19.

[51]   *Id.* ¶ 22.

[52]   Ex. E to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15-5) at 2; *see also* Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15-2) ¶ 11.

[53]   Ex. E to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15-5) at 1–2.

[54]   *See* Ex. B to Pl.'s Resp. to Mot. to Dismiss (Doc. 15-2) ¶ 12, at 4 (indicating that Defendant retained an Arkansas lobbyist to "push our agenda" with the attorney representing the Arkansas Medical Marijuana Commission and "to discuss the equities of the situation in an effort to minimize any zeal from their side . . . .").

of Arkansas, LLC that a lawyer of Defendant law firm would be attending a hearing in Arkansas regarding Holistic Industries of Arkansas, LLC's application.[55]  Despite this, nobody from the firm attended a hearing.[56]  Holistic Industries of Arkansas, LLC's application was never reviewed on the merits.[57]

In a diversity case, such as this one, a federal district court can assert personal jurisdiction over a defendant to the extent allowed by the long-arm statute of the forum state and the Due Process Clause.[58]  The Arkansas long-arm statute authorizes personal jurisdiction to the fullest extent possible consistent with the Due Process Clause.[59]  Accordingly, the question here is whether an assertion of personal jurisdiction over Defendant would violate the Due Process Clause.  "Due process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice."[60]

The Supreme Court recognizes two types of personal jurisdiction: "'general' (sometimes called 'all purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction."[61]  The amount of contacts that will satisfy due process differs between general and specific jurisdiction.  Under general jurisdiction, a court may hear "'any and all claims against' a defendant if its 'affiliations with the State are so continuous and systematic as to render it essentially at home

---

[55]  *Id.*

[56]  Ex. 3 to Def.'s Supplemental Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 19-3) ¶ 2.

[57]  Am. Compl. (Doc. 29) ¶ 27.

[58]  *K-V Pharm.*, 648 F.3d at 592.

[59]  Ark. Code Ann. § 16-4-101(B).

[60]  *Fastpath*, 760 F.3d at 820.

[61]  *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1779 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

in the forum state.'"[62]  Holistic Industries of Arkansas, LLC acknowledges that general jurisdiction is lacking here.[63]

The Supreme Court explains that "[s]pecific jurisdiction is different" from general jurisdiction.[64]  Specific jurisdiction reaches "defendants less intimately connected with a State, but only as to a narrower class of claims."[65]  "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'"[66]  For specific jurisdiction to attach, "[t]he defendant . . . must take 'some act by which it purposefully avails itself of the privilege of conducting activities within the forum state.'"[67]  "The contacts must be the defendant's choice and not 'random, isolated, or fortuitous.'  They must show that the defendant deliberately 'reached out beyond its home'— by, for example, 'exploiting a market' in the forum State or entering a contractual relationship centered there."[68]

The Eighth Circuit assesses minimum contacts with a five-factor test.[69]  The first three factors are of "primary importance."[70]  The factors are: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5)

---

[62] *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)).

[63] *See* Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15) at 7–13 (arguing only that specific jurisdiction exists here).

[64] *Ford Motor Co. v. Montana Eighth Judicial District*, 141 S. Ct. 1017, 1024 (2021).

[65] *Id.*

[66] *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[67] *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

[68] *Id.* at 1024–25 (internal citation omitted) (first quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); and then quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

[69] *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020)

[70] *Id.* (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)).

convenience of the parties."[71]   The third factor speaks only to the question "of whether specific jurisdiction exists, . . . and the last two factors "carry less weight and are not dispositive."[72]

The Court wishes to emphasize two additional things about the specific jurisdiction analysis.  First, the triggering relationship between the defendant and the forum state "must arise out of contacts that the defendant [*itself*] creates with the forum State," and [the proper] "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."[73]   Second, whether or not a defendant has physically been in the forum state is certainly relevant (and maybe highly relevant) to the analysis.  But it is not dispositive. Even where a defendant has never been to the forum state, specific jurisdiction can still be constitutionally exercised.  The Eighth Circuit said so in *Wells Dairy, Incorporated v. Food Movers International, Incorporated*.[74]   On the flip side, however, the Eighth Circuit has said that even if a defendant enters a forum state and his visit is related to the activity that gives rise to a subsequent legal claim, that does not automatically give rise to specific jurisdiction.[75]

"Because the first three factors are closely related, [the Court] consider[s] them together."[76] Holistic Industries of Arkansas, LLC has established the following.  Defendant contracted to represent a soon-to-be-formed Arkansas LLC.[77]   The contract contemplated that Defendant would assist this soon-to-be-formed Arkansas LLC in the preparation of an application that had to

---

[71]   *Id.* (quoting *Burlington Indus.*, 97 F.3d at 1102 ).

[72]   *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 912 (8th Cir. 2014) (internal citation omitted) (quoting *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006)).

[73]   *Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 721 (8th Cir. 2019) (quoting *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014)).

[74]   607 F.3d 515, 519–20 (8th Cir. 2010).

[75]   *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226–227 (8th Cir. 1987).

[76]   *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996).

[77]   Ex. 2 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-2) at 2.

conform to Arkansas law and that would be submitted to an Arkansas regulatory agency.[78]  Indeed, the Defendant reached out to a third party (with an office in Arkansas) for assistance in forming an Arkansas LLC:  Holistic Industries of Arkansas, LLC.[79]  That's purposeful availment.  This is far different from instances where a plaintiff's "unilateral activity" drags a defendant into the forum.[80]  It can be no surprise to Defendant that an alleged failure on its part to properly prepare the application for an Arkansas company that was to be submitted to an Arkansas governmental body would result in litigation in Arkansas.  This is especially true when Defendant helped form the Arkansas company in the first place.

There's more.  The engagement letter contemplated an albeit aspirational, continuing relationship with Arkansas on the part of Defendant.  Recall that the fee structure provided for Defendant to receive an equity interest in all of Holistic Industries of Arkansas, LLC's (and other related entities') Arkansas operations if the applications proved successful.[81]  So, in addition to entering into a contractual relationship centered in Arkansas, Defendant structured its remuneration (at least in part) around potential receipt of long-term gains from an equity stake in Arkansas companies.

There's still more.  When things went south with Holistic Industries of Arkansas, LLC's application, Defendant engaged an Arkansas lobbyist to "push [Holistic Industries of Arkansas, LLC's] agenda and to continue to discuss the equities of the situation in an effort to minimize any zeal from [the agency's] side . . . ."[82]  The Arkansas lobbyist was engaged by Defendant

---

[78]  Ex. 1 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-1) at 1.

[79]  Ex. 2 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-2) at 2.; *see also* Ex. 4 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-4) at 2 (listing Morgan Noble as the incorporator/organizer of Holistic Industries of Arkansas, LLC and showing Morgan Noble's address as 701 South St. Suite 100, Mountain Home, Arkansas).

[80]  *Walden*, 571 U.S. at 286.

[81]  Ex. 1 to Def.'s Answer (Doc. 3) at 7.

[82]  Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15-2) at 4.

specifically to interact with Arkansas government officials in Arkansas about Defendant's Arkansas client.[83]

Finally, recall that Defendant communicated with Sam Epstein Angel, an Arkansas resident, while preparing the application. Defendant also mailed and emailed materials into Arkansas. Although, these acts alone are insufficient to establish personal jurisdiction, they are relevant to the analysis in that they add heft to Defendant's Arkansas contacts. At bottom, the nature and the quantity of Defendant's contacts with Arkansas weigh in favor of jurisdiction.

The contacts identified above relate to the cause of action here. Holistic Industries of Arkansas, LLC is alleging that Defendant committed legal malpractice when it failed to properly complete the marijuana cultivation and dispensary applications. Defendant has had no contacts with the state of Arkansas outside of its work for Holistic Industries of Arkansas, LLC on these applications. So all the contacts described above can only be directly related to its work for Holistic Industries of Arkansas, LLC on these applications.

In sum, the first three (and most important factors) counsel in favor of jurisdiction here. The fourth and fifth factors are a wash. On the fourth, Arkansas has an interest in providing a forum for an Arkansas LLC to pursue malpractice claims. On the fifth factor, Defendant has at least a fair argument that it would be burdened by litigating this case in a foreign forum. However, given the little weight the Eighth Circuit gives this factor, the burden is not enough to overtake the primary factors. After considering all of the factors, the Court concludes that Defendant

---

[83] Defendant remained involved in the application process after receiving word that the Commission was not going to review the application on the merits. For instance, in a November 29, 2017, email from David Engel (a Holistic Industries of Arkansas, LLC representative) to Mitch Kulick (a member of the law firm), Mr. Engel states that Mr. Kulick's "last e-mail indicated that a hearing would take place before Thanksgiving." Recall that the Commission notified Holistic Industries of Arkansas, LLC of the application's deficiencies at the beginning of October 2017. It is reasonable to infer from the record that Defendant continued interacting with Arkansas (the forum) during this period.

purposefully availed itself of the Arkansas forum and that it has sufficient minimum contacts with Arkansas such that the Court may exercise jurisdiction over Defendant without offending due process.

### Arbitration

Both sides hotly contest whether an enforceable arbitration agreement exists between them.[84]  The Court looks to state contract law to determine "whether the parties have entered into a valid arbitration agreement."[85]  Sitting in diversity, the Court applies "the forum state's choice-of-law principles—here, that is Arkansas."[86]  In determining the existence and meaning of contracts, including contracts with arbitration clauses, the Arkansas Supreme Court "applies the law of the state with the most significant relationship to the issue at hand."[87]  The "following factors are relevant to the determination of which state has the most significant relationship to a particular case: 1) the place of contracting; 2) the place of negotiation of the contract; 3) the place of performance; 4) the location of the subject matter of the contract; [and] 5) the domicile, residence, nationality, place of incorporation and place of business of the parties."[88]

In this case, as in many cases, the first two factors are closely related.  Josh Genderson, purportedly on behalf of a nonexistent Arkansas company, engaged the Defendant's legal services

---

[84]  *Compare* Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14) at 16–19, *with* Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15) at 1–3.

[85]  *Robinson v. EOR-Ark, LLC*, 841 F.3d 781, 784 (8th Cir. 2016).

[86]  *Simmons Foods, Inc. v. Industrial Risk Insurers*, 863 F.3d 792, 797 (8th Cir. 2017).

[87]  *Crisler v. Unum Ins. Co. of Am.*, 366 Ark. 130, 133, 233 S.W.3d 658, 660 (Ark. 2006).  The Arkansas Supreme Court also gives near dispositive weight to a choice-of-law provision.  *See id.* (noting that the court addresses the factors when the contract at issue does not have a choice-of-law clause).  The engagement letter did contain a choice-of-law clause providing that "the substantive law of New York will govern any issues that may arise concerning this representation and any of the provisions of this agreement including its enforcement."  Ex. 1 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-2) at 1.  Because the Court must first address which parties agreed to the engagement letter, the Court disregards the choice-of-law clause for this analysis.

[88]  *Id.*, 233 S.W.3d at 660.

for the Arkansas marijuana applications.[89]  At that time, Defendant was located in New York and

Josh Genderson resided Washington, D.C.[90]  Accordingly, the place of contracting and negotiation

can only be New York or Washington, D.C. or (most likely) both.

As for place of performance, the engagement letter states that Defendant will perform the

application work "principally in the State of New York."[91]  There is no reason to assume that did

not happen.  According to Holistic Industries of Arkansas, LLC's Amended Complaint, Defendant

emailed the completed application to a FedEx location in Little Rock, Arkansas.[92]  It was submitted

to an Arkansas governmental body.  Defendant worked with an Arkansas lobbyist to assist with

the application issues.  Defendant worked with an entity that had an office in Arkansas to form

Holistic Industries of Arkansas, LLC.  It is fair to say that performance of the contract was

primarily accomplished in New York, with some work in or at least touching Arkansas.

The analysis is somewhat similar with respect to the subject-matter-of-the-contract factor.

The contract contemplated creation of an Arkansas LLC and completion of an application on its

behalf.  It was contemplated that the application would be completed in New York.  So, both

Arkansas and New York are connected to the subject matter of the contract, though Arkansas

perhaps has more of a starring role with respect to this factor.

Finally, let's consider the "domicile, residence, nationality, place of incorporation and

place of business of the parties" to the contract.[93]  For Defendant, that's New York.  For Josh

---

[89]  Ex. 3 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-3) ¶ 5.

[90]  *See* Ex. 2 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-2) (stating that Defendant is located in New York);
Ex. 3 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-3).

[91]  Ex. 1 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-1) at 1.

[92]  Am. Compl. (Doc. 29) ¶ 22.

[93]  *Crisler*, 366 Ark. at 133, 233 S.W.3d at 660.

Genderson, that's D.C.  For the non-existent company on whose behalf Genderson purportedly signed, that's Arkansas.

Given the analysis above, the Court believes that the Arkansas Supreme Court would conclude that New York has the most substantial relationship to the contract.  Each of the five factors support (to a varying degree) using New York law.  Although three factors also support (to a varying degree) using D.C. law and two factors also support (to a varying degree) using Arkansas law, the significant support for New York law found in all five factors wins the day.  It is worth noting that this is not a simple arithmetic issue, and that the Court has weighed the qualitative force of each factor and how strongly or weakly that particular factor points in the direction of a particular state.  After weighing all of these factors, the Court concludes that New York law applies to the question of whether a contract exists between Defendant and Holistic Industries of Arkansas, LLC.[94]

Defendant argues that Holistic Industries of Arkansas, LLC is bound to the arbitration provision in the September 1, 2017 engagement letter.[95]  Defendant says that, by signing the engagement letter, Josh Genderson "represent[ed] and warrant[ed] that the signatories . . . have the authority to bind the entities below, and any affiliate created in relation to the Company's Arkansas operation, to the terms hereof."[96]  The letter contained a provision that stated that "the Company" and Defendant "agree to forego the right to trial by jury and to resolve any disputes between us, or any disputes the Company has with any of our lawyers or staff, . . . through binding arbitration . .

---

[94]  In its supplemental briefing, Holistic Industries of Arkansas, LLC acknowledges that Arkansas, New York, and D.C. law are "substantially similar" with respect to a non-existent entity's capacity to contract.  Pl.'s Supplemental Br. (Doc. 37) at 2.

[95]  Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14) at 18–19.

[96]  Ex. 1 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-1) at 2.

. .".[97]  The long and short of Defendant's argument is that Josh Genderson, on behalf of Holistic Industries of Arkansas, LLC or more generally on behalf Holistic companies writ large, agreed to arbitrate all disputes.[98]  Specifically, Defendant argues that "Josh Genderson was a member of [Holistic Industries of Arkansas, LLC] with the authority to bind [Holistic Industries of Arkansas, LLC] to contractual matters."[99]

Defendant's argument is not free of difficulties.  Recall that Josh Genderson signed the letter on behalf of three entities in the following capacities: Holistic of Arkansas, Inc. as Chief Executive Officer and Authorized Representative; Liberty Management, LLC as Chief Executive Officer and Authorized Representative; and Full Moon, LLC as Authorized Representative.[100] Recall further that the engagement letter was addressed to and spoke about Holistic of Arkansas, LLC (not Holistic Industries of Arkansas, LLC and not Holistic of Arkansas, Inc.).  Finally, recall that Holistic Industries of Arkansas, LLC was not formed as an Arkansas limited liability company until September 11, 2017—11 days after the engagement letter was signed by Josh Genderson. Based on these facts, Holistic Industries of Arkansas, LLC says that Josh Genderson could not have bound Holistic Industries of Arkansas, LLC.

Holistic Industries of Arkansas, LLC's main argument is that Genderson could not bind Holistic Industries of Arkansas, LLC to the engagement letter because "there was no Holistic Industries [of Arkansas, LLC] on September 1, 2017."[101]  Holistic Industries of Arkansas, LLC further argues that Defendant has presented no authority for the proposition "that a non-existent

[97] *Id.* at 3.

[98] *See* Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14) at 18–19.

[99] *Id.* at 18.

[100] Ex. 1 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-1) at 4.

[101] Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15) at 6.

Arkansas limited liability company can enter into a contract."[102]  As a result, Holistic Industries of Arkansas, LLC argues it is not bound by the arbitration provision in the engagement letter and cannot be compelled to arbitrate.[103]

Because Holistic Industries of Arkansas, LLC itself could not have signed the engagement letter (because the company was not in existence), the first question is whether Josh Genderson could bind Holistic Industries of Arkansas, LLC under agency principles.  Under New York law, the answer is no.  When an agent purports to enter into a contract on behalf of a non-existent principal, the principal "cannot be bound by the terms thereof 'unless the obligation is assumed in some manner by the corporation after it comes into existence by adopting, ratifying, or accepting it.'"[104]  Holistic Industries of Arkansas, LLC could be bound to the terms of the engagement letter only if Holistic Industries of Arkansas, LLC adopted the terms of the engagement letter after Holistic Industries of Arkansas, LLC was formed.  Defendant has not presented any evidence suggesting that such adoption occurred.  Indeed, Defendant never mentions adoption in its moving papers.  As a result, Mr. Genderson did not bind Holistic Industries of Arkansas, LLC to the arbitration agreement in the engagement letter.

But that's not the end of the story.  Defendant raises equitable estoppel as an alternative basis for holding Holistic Industries of Arkansas, LLC to the terms of the engagement letter.[105]

---

[102] *Id.*

[103] *Id.*

[104] *Metro Kitchenworks Sales, LLC v. Continental Cabinets, LLC*, 820 N.Y.S.2d 79, 81 (N.Y. App. Div. 2006) (quoting 14 N.Y. Jur. 2d, Business Relationships § 97); *see also Belding v. Vaughan*, 108 Ark. 69, 157 S.W. 400, 402 (Ark. 1913) ("Promoters are merely persons who, for purposes of their own, bring about the formation of the corporation.  In assuming to make contracts in its name or behalf [sic] before it comes into existence, they do not stand in the relation of agency, and they represent only themselves, inasmuch as a nonexisting body cannot have agents." (quoting Alger on the Law of Promoters and Promotion of Corporations, p. 199)).

[105] Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 19) at 11–12; Def.'s Supplemental Brief (Doc. 38) at 5–6.  Holistic Industries of Arkansas, LLC contends that Defendant waived its estoppel argument by not raising it until the Reply Brief.  *See* Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15) at 6 n.3 (The "Firm has not argued—and has therefore waived any argument—that Holistic Industries should be compelled to arbitrate as a nonsignatory under equitable doctrines . . . .").  For support, Holistic Industries of Arkansas, LLC cites several district court

The Court of Appeals of New York explains that "[a]rbitration is a matter of contract, 'grounded in the agreement of the parties.'"[106]   As such, "nonsignatories are generally not subject to arbitration agreements."[107]   However, the Court of Appeals has (at least implicitly) suggested the viability of an important exception to this general rule.  It has explained that "[s]ome New York courts have relied on the direct benefits estoppel theory, derived from federal case law, to abrogate the general rule against binding nonsignatories."[108]   And, without explicitly adopting the theory, the Court of Appeals analyzed whether the particular facts of the case in front of it fit within the direct benefits estoppel theory.[109]   Based on this, and based on the general acceptance of this theory across much of the country,[110] the Court predicts that the New York Court of Appeals would and will adopt the direct benefits estoppel theory.[111]

Under the direct benefits estoppel theory, "a nonsignatory may be compelled to arbitrate where the nonsignatory 'knowingly exploits' the benefits of an agreement containing an arbitration clause, and received benefits flowing directly from that agreement."[112]   Indirect benefits, however,

---

cases, some of which have been affirmed by the Eighth Circuit.  None of these cases present the same circumstances as the case at bar.  In our case, the first logical time to raise equitable estoppel regarding the engagement letter was after Holistic Industries of Arkansas, LLC specifically denied the applicability of the engagement letter.  This denial occurred in Holistic Industries of Arkansas, LLC's Response to Defendant's Motion to Dismiss or Compel. *Id.* at 6–7.  So the first logical time to raise estoppel was in Defendant's Reply Brief, not in the Brief in Support of Motion to Dismiss or Compel.  The cases cited by Holistic Industries of Arkansas, LLC involve much clearer circumstances of parties withholding arguments that should have been raised earlier.  Defendant did not waive equitable estoppel.  Moreover, Holistic Industries of Arkansas, LLC has joined the issue by arguing that equitable estoppel does not apply because Holistic Industries of Arkansas, LLC did not receive a direct benefit of the engagement letter.  Pl.'s Supplemental Br. (Doc. 37) at 4 n.7.

[106] *In re Belzberg v. Verus Invs. Holdings Inc.*, 977 N.Y.3d 626, 630 (N.Y. 2013) (internal citation omitted) (quoting *County of Sullivan v. Edward L. Nezelek, Inc.*, 42 N.Y.2d 123, 128 (N.Y. 1977)).

[107] *Id.*

[108] *Id.*

[109] *Id.*

[110] *See infra* note 120.

[111] *See Progressive N. Inc. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) (explaining that federal courts, when interpreting state law, "must attempt to predict how the highest [state] court" would resolve an undecided issue under state law).

[112] *Belzberg*, 42 N.Y.3d at 631; *see also MAG Portfolio Consultant, GmbH v Merlin Biomed Group LLC*, 268 F.3d

don't suffice.[113]  "A benefit is indirect where the nonsignatory exploits the contractual relation of the parties, but not the agreement itself."[114]  Holistic Industries of Arkansas, LLC received direct benefits from the engagement letter.  As a contemplated result of the engagement agreement, Defendant caused Holistic Industries of Arkansas, LLC to come into existence on September 11, 2017.[115]  Holistic Industries of Arkansas, LLC provided information to Defendant throughout the application process.[116]  Holistic Industries of Arkansas, LLC knew the Defendant was preparing the application.  Holistic Industries of Arkansas, LLC wanted Defendant to prepare the application.  Defendant completed the application materials and sent the materials to Holistic Industries of Arkansas, LLC, which then submitted the materials to the Medical Marijuana Commission for review.[117]  Subsequently, Defendant hired and directed (with the knowledge of Holistic Industries of Arkansas, LLC) an Arkansas lobbyist to help with the application process.

The benefits that Holistic Industries of Arkansas, LLC received (specifically the preparation of the marijuana application and the direction of the lobbyist) flowed directly from the engagement letter.  Holistic Industries of Arkansas, LLC and its promoters knew about and "were comfortable" with Defendant assisting Holistic Industries of Arkansas, LLC in the application

---

58, 61 (2d Cir. 2001) ("Under the estoppel theory, a company 'knowingly exploiting an agreement with an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement.'") (quoting *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995)); *Deloitte Noraudit A/S v Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) ("Noraudit knowingly accepted the benefits of the Agreement through its continuing use of the name 'Deloitte.'"); *Reid v Doe Run Resources Corp.*, 701 F.3d 840, 846 (8th Cir. 2012) ("Direct benefits estoppel applies when a nonsignatory knowingly exploits the agreement containing the arbitration clause.") (quoting *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 361–62 (5th Cir. 2003)).

[113] *Belzberg*, 42 N.Y.3d at 631.

[114] *Id.*

[115] Ex. 2 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-2) ¶ 3; Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15-2) ¶ 7.

[116] Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15-2) ¶ 9; *see also* Am. Compl. (Doc. 29) ¶ 11.

[117] Am. Compl. (Doc. 29) ¶ 22.

process. [118]  And they actually received the assistance.  This was the exact assistance contemplated in and covered by the engagement letter.  Holistic Industries of Arkansas, LLC exploited the engagement letter to receive direct benefits.[119]  Accordingly, the Court concludes that Holistic Industries of Arkansas, LLC is estopped from denying that it is bound by the arbitration clause in the engagement letter.[120]

---

[118] Ex. B to Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 15-2) ¶ 6.

[119] That the marijuana application was unsuccessful and that faulty legal representation is alleged to be the reason for the failure does not alter the analysis.  The "direct benefits" question is not about the success of the product or service received.  *See, e.g.*, *American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 351, 353 (2d Cir. 1999) (compelling non-signatories to arbitrate their negligent design and construction claims that arose out of a contract containing an arbitration clause).

[120] Even if Arkansas law applied here, the Court's estoppel determination would not change.  The Arkansas Supreme Court has not weighed in on this exact question.  But the Arkansas Supreme Court recognizes the ability of a nonparty to "compel arbitration through 'traditional principles of state law' such as 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'"  *Bigge Crane & Rigging Co. v. Entergy Ark., Inc.*, 2015 Ark. 58, at 4, 457 S.W.3d 265, 268 (quoting *Arthur Andersen, LLP v. Carlisle*, 556 U.S. 624, 631 (2009)).  Additionally, though not binding, the Arkansas Court of Appeals has acknowledged the direct-benefits-estoppel doctrine.  *Sterne, Agee & Leach v. Way*, 101 Ark. App. 23, 27, 270 S.W.3d 369, 374 (Ark. Ct. App. 2007) ("[A] nonsignatory can be estopped from refusing to comply with an arbitration clause if he has received a direct benefit from the contract.") (quoting *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411 (4th Cir.2000)).  The Court predicts that the Arkansas Supreme Court would hold that direct benefits estoppel is available to bind a nonsignatory to an arbitration agreement.  This form of estoppel is not novel.  Indeed, multiple federal courts of appeals, including the Eighth Circuit, and multiple state courts have considered "direct benefits estoppel" in analyzing whether to bind nonsignatories to arbitration agreements.  *See supra* note 112; *In re Weekley Homes, L.P.*, 180 S.W. 3d 127, 135 (Tex. 2005) ("[W]e agree with the federal courts that when a nonparty consistently and knowingly insists that others treat it as a party, it cannot later 'turn its back on the portions of the contract, such as an arbitration clause that it finds distasteful.'  A party cannot both have his contract and defeat it too.") (internal quotations omitted); *Traders' Mart, Inc. v. AOS, Inc.*, 268 So.3d 420, 429 (La. Ct. App. 2019) (holding that a nonsignatory to an arbitration agreement can be compelled to arbitrate because the nonsignatory "exploited and embraced the contract and knowingly sought and obtained direct benefits from the contract"); *Nitro Dist., Inc. v. Dunn*, 194 S.W.3d 339, 348 (Mo. 2006) (en banc) (finding persuasive the reasoning from federal courts recognizing the direct-benefit-estoppel theory); *Wilson v. Willis*, 827 S.E.2d 167, 175–177 (S.C. 2019) (holding that nonsignatories were not bound to an arbitration clause because they did not "knowingly exploit[] and receive[] a direct benefit from the . . . agreement"); *NORCAL Mut. Ins co. v. Newton*, 100 Cal.Rptr.2d 683, 697 (Cal. Ct. App. 2000) (holding that a nonsignatory to an insurance policy, "having sought and accepted the benefit of the insurance policy, . . . was required to abide by the policy's requirement of arbitration of disputes"); *Jackson v. Home Depot, U.S.A., Inc.*, 857 S.E.2d 321, 330 (N.C. 2021) (concluding that, because a nonsignatory was not seeking a direct benefit from the provisions of an agreement with an arbitration clause, equitable estoppel could not be used to compel arbitration); *Walker v. Collyer*, 9 N.E.3d 854, 861–863 (Mass. App. Ct. 2014) (discussing direct benefits estoppel).

Having determined the existence of an enforceable arbitration clause, the Court briefly discusses whether Holistic Industries of Arkansas, LLC's legal malpractice claim falls within the scope of that clause.  It does.

The Eighth Circuit directs the Court to liberally construe arbitration agreements, "resolving any doubts in favor of arbitration … unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[121]  To resolve this issue, the Court asks "whether the arbitration clause is broad or narrow."[122]  If the clause is broad, the Court must send the claim to arbitration "'as long as the underlying factual allegations simply touch matters covered by the arbitration provision.'"[123]

The arbitration clause in the engagement letter is broad; it states:

> In the event any dispute between us arising from or relating to our work cannot be resolved informally, we both agree to forego the right to trial by jury and to resolve any disputes between us, or any disputes the Company has with any of our lawyers or staff . . . exclusively through private and confidential <u>binding</u> arbitration in New York City before JAMS or NAM . . . .[124]

The Eighth Circuit has routinely held that similar arbitration language is broad.[125]  Indeed, this provision "constitutes the broadest language the parties could reasonably use to subject their disputes to that form of settlement, including collateral disputes that relate to the agreement."[126]

Holistic Industries of Arkansas, LLC's factual allegations fall within the scope of the arbitration clause.  Holistic Industries of Arkansas, LLC's entire claim is based on the services

---

[121] *Parm v. Bluestem Brands, Inc.*, 898  F.3d 869, 873–74 (8th Cir. 2018) (quoting *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)).

[122] *Id.* at 874 (quoting *Unison*, 789 F.3d at 818).

[123] *Id.* (quoting *Unison*, 789 F.3d at 818).

[124] Ex. 1 to Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 14-1) at 4.

[125] *See e.g. Parm*, 898 F.3d at 874 ("Arbitration clauses covering claims 'arising out of' or 'relating to' an agreement are broad.") (quoting *Zetor N. Am., Inc. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017)).

[126] *Id.* (quoting *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997)).

Defendant performed pursuant to the agreement.  The Court will enforce the arbitration clause. This dispute must be submitted to binding arbitration as set forth in the engagement letter.

<u>**Conclusion**</u>

Defendant's Motion to Dismiss is GRANTED in part and DENIED in part.  Holistic Industries of Arkansas, LLC has standing and the Court has personal jurisdiction over Defendant. However, the dispute must be submitted to binding arbitration as set forth in the engagement letter. The Court STAYS this case pending resolution of the arbitration.  Defendant's merits-based arguments are denied as moot.  The Clerk is directed to administratively terminate this case.  It will be reopened upon the request of either party at the conclusion of arbitration.

IT IS SO ORDERED this 2nd day of September 2021.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE